Good morning, distinguished panel. Mr. Allmay, may it please the court. This case is about protection of the home, where the need for self-defense is most acute. As this court has recognized, the home embodies a unique place in the pantheon of constitutional rights. Counsel, let me just get you right to the point that I'd like to start with, and that's our standard of review. As I understand it, the defendant did not request an instruction on the non-duty to retreat in the home. Is that true or not true? That is true, Your Honor. So are we, we normally review for abuse of discretion. Does this make it even one step removed from that and something like plain error analysis that the court had to know and there was a legal error and so forth, all the things that go into plain error analysis? Your Honor, it's not my client's contention that the district court in this case abused their discretion. I don't believe that the district court had the precedent in front of them to understand exactly what Heller had changed about self-defense. So your entire case is based on Heller? It's based on Heller's recognition of an inherent right of self-defense. But there's, there was an instruction given on self-defense, obviously, and the instruction, the model instruction already says under the circumstances, what would a reasonable person do under the circumstances, and that allows argument on what all the circumstances are. He was in his own home versus, this was unreasonable because he was in a big park and he could have walked away. And it's our contention, Your Honor, that prior to Heller, self-defense is merely a privilege that one can employ. And after Heller, it is a right. Now it's open season. You get to kill people who come into your home. No, but you have a right, Your Honor, to have a weapon within your home and to protect your family and yourself. But you still can only use it for self-defense if it is the amount of force that is reasonably necessary under the circumstances. It doesn't change that principle, does it? I mean, Heller wasn't talking about that. It was talking about possession for self-defense, but did it change the definition of what constitutes self-defense when it's used? I think that you have to start with, what we ask is that the court recognize this as a de novo standard and that the jury is not adequately... Recognize what is a de novo standard? That the jury was not adequately instructed in light of Heller. So that is, and to answer my question, that is your issue, whether Heller changed the law with respect to instructions. Yes. However, the model... If you hadn't had Heller, you wouldn't be making these arguments? I would not be making these arguments if Heller had not been decided by you. You didn't think it was appropriate to offer an instruction about in the home you don't have to retreat? Your Honor, I was not trial counsel in this case. I believe that there is no case that we can point to that says that there is a duty to, that there is not a duty to retreat. I thought that was the universal rule, that you don't have to retreat in your own home. Prior to... Prior to Heller. It was a concept. Oh, a concept. I'm sorry, we're laughing because yesterday we had a lawyer who tried to distinguish concepts, theories, and something else. I think the biggest distinction here is that prior to Heller, self-defense is a privilege. We know that in state jurisdiction... You know, this was a country with a lot of rights before Heller was decided. Absolutely. But Heller recognizes this right. It recognizes the right to keep a gun in your home. Or anywhere you want, to take a gun to church, I guess, in some states. Heller only tells us that we can use a gun for lawful purposes. Which means that as far as self-defense, it has to be no more force than reasonably necessary under the circumstances, which is exactly what the law, as it was instructed under the model instruction. Heller doesn't say that you get to use more force than is reasonably necessary under the circumstances. It's my client's contention that it elevates the status of the use of self-defense in your home. In jury deliberation... The status of self-defense in the home was pretty good before Heller, even though you're not arguing it. Unless that's not an issue in this case and that your client may be interested in guns and that you weren't the trial counsel. But there was a right not to retreat in your home. Not the same duty that you had to retreat outside of your home, which was fairly universally recognized. I don't believe, Your Honor, that it was a right prior to Heller. I believe that it was a privilege. It would have been a pretty good argument, don't you think? Absolutely. I think that you need... I'll be the first one to say that the instruction in this case is not adequately... It's the exact instruction that the defendant requested. I guess that's why I keep coming back to our standard of review. The court gave not only the model instruction, but the instruction that the defendant asked for on this topic. And it covers that the government has to prove beyond a reasonable doubt that there wasn't self-defense and all of the things that are normal. And I guess that's the hurdle that I have difficulty, just speaking for myself, overcoming in this case. I thought your trial counsel requested that in the home the need for self-defense is most acute. Is that the instruction you had? Yes, Your Honor. Well, that's not a model instruction in every sense of the word. But the idea I thought the trial counsel was trying to convey was that you had a different obligation to retreat outside of the home than you do in the home, although said most inartfully. So my question, speaking for myself, is what do you do when the defendant might be entitled to a decent instruction, but asks for one that is not put very artfully? The prosecutor's closing argument was that he failed to retreat, and he made a choice not to retreat. And that was also the cross-examination. Why didn't you retreat and use the telephone? It seemed to me the prosecution's case was that he failed to retreat, and therefore an instruction on the duty to retreat when in the home might have been helpful from your client's standpoint. But that seemed to be not what we're considering now. We're considering whether Heller changed the law. I believe that if you put yourself in the hypothetical shoes of the jury in this case, Heller tells us that you have an inherent right to have a weapon and employ that weapon for lawful purposes. So in jury deliberations you start with that. But that begs the question of what is a lawful purpose in this context. And Heller didn't deal with jury instructions. He dealt with possession. Absolutely. But Heller tells us that there's no more lawful purpose than employing an arm in defense of your home. So you start in deliberations with Mr. Morset's right, an individual right to have that arm within his home. We don't know what the scope of Heller is, but we do know one thing from Heller. Well, I don't think you're going to find that with this case either. But you've got a minute and 20 seconds if you want to save anything for rebuttal. I will save something. May it please the Court. Kurt Alme, I represent the District of Montana. I just want to quickly touch on the arguments raised by the defense about Heller. It's the government's position that Heller didn't change the standard of review or the test for self-defense. It simply expressed or explained the need for being able to defend yourself in the home. I'm going to give you a hard time, too, though. Why isn't that sufficiently unique and important that a jury should be told about it when the acts in question take place in the defendant's home? Two things. I guess if we go past Heller and just say rely on the common law castle doctrine or duty of no retreat, in this case, this instruction wouldn't have got the job done anyway. This instruction that was proposed was very vague. What does it mean? Well, what is the test when a district court gets something that is an insufficient, incorrect proposed instruction from a defendant, but it touches on an issue that ought to be instructed upon in better terms? Can the court simply say, well, your instruction is wrong, and I'm not even going to think more about that topic? Or is the court required to potentially give a better instruction on the same topic? My understanding of the law is if the court thought that an instruction was required that wasn't asked for for the defendant, the court should give it. If the court didn't and the defense doesn't object, then it would be subject for plein air review here if it was raised by appellate counsel. In this case, it wasn't even raised in the defendant's initial brief, so we'd argue it's waived. The castle doctrine idea wasn't even raised until the reply brief, so we weren't able to brief the implications of what the castle doctrine approach would have been in this case. There was no discussion of retreat at the jury settlement conference or anything like that? No. As far as my review of the record is, there wasn't. There wasn't trial counsel, but there wasn't. I did want to address, though, that issue about whether or not the government somehow opened the door to a duty of no retreat instruction. We would argue that's not the case. Now, Judge Reinhart pointed out that in closing, the AUSA did twice refer to using the phone or staying in the bedroom. In the bedroom. Yeah. But in both those cases, it was in the context of dealing with whether or not Mr. Morset feared for his personal safety. It wasn't to say that he had the duty to retreat. It was trying to demonstrate that he wasn't afraid. There was no imminent fear, imminent threat, imminent harm. That was the context it was raised, and I direct the court to the record. If you look at ER 4-26 and ER-425, that's the two places where it's raised in closing. In ER 4-26, the AUSA very clearly put in context that subsequent record, reference to the phone and the bedroom, when she said, Mr. Morset had to have a reasonable fear, reasonably thinking he needed to defend himself against these two men. So it wasn't in the context of arguing that he had a duty to retreat, but it was in the context of analyzing the model instruction itself, which says that you have to fear imminent threat. The same thing happened on 4-25. The AUSA noted that Morset could have called the police from the phone in the kitchen, quote, if he was really worried about what these guys were doing. She didn't open the door to any type of duty of retreat or some sort of castle doctrine instruction. The other thing I wanted to focus on, too, is even if this instruction was meant to be some sort of substitute for a duty of no retreat or castle doctrine instruction, it's too vague for a jury to make use of. Well, that's why I asked you the question I did about the district court's obligation to reframe a proposed instruction that's on a legitimate defense topic. It sounds like you agree that if someone brings in an inartful but important proposed instruction on a legitimate theory of defense that the court has some obligation to rephrase it so that it works. If the current instructions aren't sufficient to capture the theory of defense, which we argue, of course, that they were in this case. The other issue is, in this case, that the court didn't have the obligation to raise that again because it wasn't raised. The defendant didn't raise it. The theory of the defense dealt squarely with the two prongs of the instructed self-defense instruction, which is defense counsel argued Morissette was afraid that Ontiveros and Hobbs were going to hurt him, and then he then argued Morissette only used sufficient force to protect himself. So fear of getting hurt, using sufficient force, is exactly what the model instruction addresses. In your view, did Heller and McDonald change the law of self-defense when actually used, whether by firearm or otherwise? No. It's my reading of Heller that Heller only expressed the need to be able to exercise self-defense in the home. It didn't change the test for under what circumstances that self-defense can be used. If this case was about a prosecution of Mr. Morissette for violating a statute for possessing an asp in his home, then Heller would have relevance. But it doesn't go to Heller, it doesn't explicitly, and there's nothing implicitly in Heller that would suggest that the court was trying to alter the standard, the old common law standard for self-defense. If there are no further questions, I'll cede the rest of my time. Thank you. I'll just address the reasonableness. I think that Heller says that it's now more reasonable and something that the jury should take into consideration that when a person is in their home, they have a right to have this firearm or an arm and employ that. An asp it was. An asp. Yeah. Has anybody questioned the right to have an asp? Has anybody questioned the right to have an asp? No. No. What Heller tells us is that just like the First Amendment protects modern forms of speech and the Fourth Amendment protects modern forms of searches, the Second Amendment protects modern forms of arms. I've said on questions that you had a right to have an asp in his home. There's no question. So then what does Heller tell us about this case? Heller tells us that people, jury members, are going to tell you that they either do like guns, they don't like guns, they like arms, they don't like arms. And in this case. Did they know what an asp is? Well, they were instructed. I mean, the record is clear. Do you think that what matters is whether they like asps or don't like asps? Absolutely. Whether they believe that a person should be employing an arm within their home, that's going to skew the jury's deliberations from the very beginning. And you think in Montana, a typical jury is horrified by people having weapons in their home? No. No, and with all due respect, Your Honor, we're not talking about merely just Montana. I mean, my definition of reasonableness being from Montana, I grew up with guns within my home. I have a gun next to my bed. Other people may not. I know in Montana there's any number of people that do not feel that an individual has a right to have a gun, that it's a collective right, as the dissent in Heller tells us. I still have trouble making sense once more. Your Honor, what is it about the right to have a gun in your home has to do with this case? I mean, the instruction you're talking about is not possession, is it? It's when you can use the gun or the asp or whatever it is. How does that connect with this case? You want him to tell you of the right to use it as opposed to possess it? Yeah. It's Mr. Morissette's contention that the jury should be instructed that you have an individual right to have an arm within the home and use that for self-defense. That's what Heller tells us. We don't know the full scope of Heller, but it does tell us one thing, that within the home we have a special status as citizens of the United States to have a weapon there, of all places. Now, we don't know whether we have a right. But, see, that's what nobody's disagreeing about, a right to have a weapon. Nobody's arguing about that in this case. Jury members may. And if they don't have that. So your purpose, what you wanted in the instruction, or what you want in the instruction, is to tell the jury that there is a constitutional right to have weapons in the home. Is that the instruction you want? I want an instruction that tells the jury that they have a constitutional right that the defendant, if he's within his home and the circumstances and the record reflect that he's within his home, then he has an inherent right under Heller to have that weapon and employ it in lawful self-defense. Did you start out there? That's a tautology, though, because you still, in your proposal, have not defined lawful self-defense, and it is properly defined by the instruction that was given. That portion of it is what you asked for. And I think, Your Honor, that the model instruction covers the use of the weapon. But you have to start with a weapon that he has the right to have the weapon initially. So you're satisfied with the instruction as to when you can use the weapon in your home? On the amount of force that's employed with the weapon. It doesn't tell us about the circumstances of being in the home and using that weapon, having the right to have that weapon. Okay. All right. I think I understand. Thank you. The case is to be submitted.
judges: Reinhardt, Graber, Paez